**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re:<br><br>BW Industries, Inc., et al.,<br><br>Debtors. | ) | Ch. 7<br><br>Case No. 23-10844 (MFW)<br>(Jointly Administered) |
| Jeoffrey L. Burtch, in his capacity as Chapter 7 Trustee for the bankruptcy estates of BW Industries, Inc., et al.,<br><br>Plaintiff,<br><br>v.<br><br>Voyager Pacific Opportunity Fund II, LLC,<br><br>Defendant. | ) | Adv. No. 25-51045 (MFW)<br><br>**Rel. Docs. 16, 17, 19, 20, 21, 23** |

**MEMORANDUM OPINION**[1]

Before the Court is the Trustee's Motion for Reconsideration of this Court's Memorandum Opinion and Order dated January 22, 2026, granting in part Voyager's Motion to Dismiss the Trustee's Complaint. For the reasons stated below, the Court will deny the motion.

---

[1] The Court is not required to state findings of fact or conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure. Instead, the facts recited are those well-pled allegations in the Amended Complaint which must be accepted as true for the purposes of this Motion to Dismiss. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## I. BACKGROUND

Bitwise and its affiliates (the "Debtors") had revenues of less than $5 million per year but were allegedly spending more than $50 million per year,[2] leading to, inter alia, cash flow issues.[3] To help resolve the problem, the Debtors obtained a loan of $750,000 from Voyager Pacific Opportunity Fund II, LLC ("Voyager") on December 12, 2022.[4] The loan was represented by a note (the "Voyager Note") whose terms required the Debtors to repay the loan plus a "Fixed Loan Fee" of $25,000 four days later (by December 16, 2022).[5] The Debtors repaid Voyager $779,917.81 on December 23, 2022.[6]

The Debtors' financial situation did not improve and on June 28, 2023, the Debtors filed a chapter 7 petition. Jeoffrey Burtch was appointed as the chapter 7 trustee ("Trustee").[7] On June 27, 2025, the Trustee sued Voyager to avoid the Voyager Note transaction and the Debtors' December 23, 2022, payment as fraudulent transfers.[8]

---

[2] Adv. D.I. 1 ¶ 19.

[3] Id. ¶ 27.

[4] Id. ¶ 43.

[5] Id. ¶ 44.

[6] Id. ¶ 49.

[7] Id. ¶¶ 8-9.

[8] Id. ¶ 10.

In Counts 1 and 2, the Trustee sought to avoid the Debtor's "Obligations" defined by the Trustee as the "contractual terms requiring payment of interest at a rate of 304% per annum" as a constructively or actually fraudulent transfer under sections 544(b) and 548 of the Bankruptcy Code and sections 3439.04 and 3439.05 of the California Civil Code.[9] In Counts 3 and 4, the Trustee sought to avoid the "Transfer," defined by the Trustee as the $779,917.81 that the Debtors wired to Voyager to satisfy the Voyager Note and its related fees, as a constructively or actual fraudulent transfer under sections 544(b) and 548 of the Bankruptcy Code and sections 3439.04 and 3439.05 of the California Civil Code.[10] In Count 5 the Trustee sought to recover the Transfer and in Count 6 the Trustee sought to disallow Voyager's claims.[11]

Voyager filed a motion to dismiss Counts 3, 4, and 6, which the Trustee opposed.[12] After consideration of the parties' briefs, the Court entered a Memorandum Opinion and Order dated January 22, 2026, granting the motion with respect to Counts 3

---

[9] Id. ¶ 54-55. The Complaint is silent about the Voyager Note's governing law, but both parties cite California law as the applicable state law under section 544.

[10] Id. ¶ 47.

[11] Id. ¶¶ 82-83, 85-87.

[12] Adv. D.I. 6 at 5; Adv. D.I. 7.

and 6, but denying it as to Count 4.[13]

The Trustee filed the instant motion for reconsideration of the Court's order dismissing Count 3, which Voyager opposed.[14] Briefing is complete and the matter is ripe for decision.

## II. JURISDICTION

The Court has subject matter jurisdiction over this adversary proceeding.[15] The Trustee consented to entry of a final order or judgment by this Court.[16] Voyager did not state whether it consented to the entry of a final order or judgment by this Court, which according to the local rules constitutes consent.[17]

## III. DISCUSSION

### A. Standard of Review

The Court may reconsider its prior orders if there has been a change in controlling law, newly discovered evidence, or is a need to correct a clear error of law or fact to prevent manifest

---

13 Adv. D.I. 16 & 17.

14 Adv. D.I. 19, 21.

15 28 U.S.C. §§ 1334(b) & 157(a).

16 Adv. D.I. 1 ¶ 7; Adv. D.I. 18 ¶ 7.

17 Del. Bankr. L.R. 7012-1.

injustice.[18] The movant must show more than disagreement with a prior ruling; it must show that the legal error was a "wholesale disregard, misapplication or failure to recognize controlling precedent."[19] A motion for reconsideration is not a vehicle for repeating rejected arguments.[20]

B. Application to this Case

In this case, the Trustee does not assert that there has been a change in controlling law or newly discovered evidence. Rather, the Trustee asserts that the Court clearly erred in dismissing Count 3 which sought to avoid the Transfer as constructively fraudulent. He contends that because the underlying Obligation to make the payment is still subject to avoidance, it was clear error for the Court to hold that Voyager is entitled to retain any portion of that payment. In support, the Trustee makes the same arguments and cites the same legal authority that he cited in response to the Motion to Dismiss.[21]

---

[18] In re Energy Future Holdings Corp., 904 F.3d 298, 310-11 (3d Cir. 2018). See also Fed. R. Civ. P. 59(e); Fed. R. Bankr. P. 9023(a).

[19] Energy Future Holdings 904 F.3d at 311-12.

[20] See Dentsply Int'l, Inc. v. Kerr Mfg. Co., 42 F. Supp. 2d 385, 419 (D. Del. 1999) (holding that motions for reargument "should not be used to rehash arguments already briefed or to allow a 'never ending polemic between the litigants and the Court.'") (quoting Oglesby v. Penn Mutual Life Ins. Co., 877 F. Supp. 872, 892 (D. Del. 1995)).

[21] Compare Adv. D.I. 7 at 7-8 with D.I. 20 at 4-5. See also TSIC v. Thalheimer (In re TSIC, Inc.), 428 B.R. 103, 115 (Bankr. D. Del. 2010); Ogle v. JT Miller, Inc. (In re HDD Rotary Sales, LLC), 512 B.R. 877, 885 (Bankr. S.D. Tex. 2014).

He admits that the Court found his authority distinguishable and not persuasive.[22]

The Court is not persuaded by the Trustee's second attempt to argue its position on dismissal of Count 3. First, the Trustee is incorrect in stating that the Court held that Voyager "is entitled to retain" any portion of the Transfer.[23] The Court only granted the Motion to Dismiss the Trustee's claim in Count 3 that the Transfer was avoidable as a constructively fraudulent transfer.[24] The Court denied the Motion to Dismiss Count 4 and, therefore, to the extent that the Trustee can establish that the Transfer was actually fraudulent, that Transfer may yet be avoided.

Second, the Court did not decide the merits of the Trustee's claim to avoid the Transfer as constructively fraudulent. Rather, it held that the Trustee had failed to state a claim for avoidance of $750,000 of the Transfer because the Trustee's Complaint admits that Voyager actually gave that amount to the Debtor.[25] The Court, therefore, concluded that the Trustee had failed to establish that the Debtor had received less than

---

22 See Adv. D.I. 16 at 9.

23 Adv. D.I. 20 at 4.

24 Adv. D.I. 16 at 14-17.

25 Id. at 8-9 (citing Adv. D.I. 1 ¶ 46 ("On December 12, 2022, Defendant wired the sum of $750,000 to [the Debtors].")).

reasonably equivalent value for the Transfer.[26]

Third, in its Memorandum Opinion, the Court did address the caselaw cited by the Trustee in support of its opposition to the Motion to Dismiss and now in support of its Motion for Reconsideration.[27] The Court found that caselaw was distinguishable and did not support the Trustee's position.[28] The Trustee's continued reliance on that authority does not persuade the Court that it made a clear error of law.

For example, the Trustee argues that the TSIC Court held that the avoidance of the underlying transaction eliminated any debt and, therefore, the payment in satisfaction of that debt could not be reasonably equivalent.[29] In its Memorandum Opinion, the Court addressed this same argument and found the TSIC case distinguishable (and still does) because the "underlying transaction" that was avoided in TSIC was a promise not to sue in the future, not an antecedent debt, and therefore not reasonably

---

[26] Id. at 8-9 (citing 11 U.S.C. § 548(d)(2)(A) (defining "value" in the context of fraudulent transfers to include "satisfaction [of an] antecedent debt of the debtor."). See also VFB LLC v. Campbell Soup Co., 482 F.3d 624, 631 (3d Cir. 2007) (stating that a party receives reasonably equivalent value when it gets approximately the same value that it gave).

[27] Adv. D.I. 16 at 9 (discussing TSIC and HDD Rotary Sales).

[28] Id. (noting that the TSIC case did not involve the repayment of an antecedent debt but was instead a payment for a promise and that the HDD Rotary Sales case supported the Court's conclusion because the payment was in exchange for value given in the form of services).

[29] Adv. D.I. 20 at 5.

equivalent to the millions of dollars the debtor paid in severance payments.[30] In contrast to the promise of a future benefit in TSIC, the Trustee admits that Voyager gave actual value ($750,000) to the Debtors before the Transfer (i.e., repayment) was made.[31]

Similarly, the Court rejects the Trustee's argument that the HDD Rotary Sales case does not support the Court's ruling because that decision was rendered only after a full trial on the merits.[32] In this case, no trial is necessary because the Trustee has admitted that reasonably equivalent value was given by Voyager when it wired $750,000 to the Debtors.[33] That admission mandates the conclusion that the Trustee has failed to state a claim for avoidance of the Transfer as a constructively fraudulent transfer.[34]

The Trustee does, however, raise one argument that he failed to raise in his opposition to Voyager's Motion to Dismiss. The

---

[30] Adv. D.I. 16 at 9 (citing TSIC, 428 B.R. at 115, for its holding that a severance payment made in exchange for a promise not to sue – not for repayment of an antecedent debt - was for less than reasonably equivalent value).

[31] Adv. D.I. 1 at ¶ 46 ("On December 12, 2022, Defendant wired the sum of $750,000 to [the Debtors].").

[32] Adv. D.I. 20 at 5 (citing HDD Rotary Sales, 512 B.R. at 879).

[33] Adv. D.I. 1 at ¶ 46.

[34] 11 U.S.C. § 548(a)(1)(B) (permitting avoidance as constructively fraudulent only if the debtor "received less than reasonably equivalent value in exchange for such transfer or obligation.").

Trustee contends that, even if Voyager gave the Debtor $750,000 in value, Voyager still has the burden of proving that the Transfer was received by it in good faith.[35] He contends that the Court concluded in its Memorandum Opinion that there was no basis for any finding of good faith at this stage of the proceeding. The Court rejects this argument. The Court's comment on Voyager's burden to show good faith was made in the context of the Court's conclusion that the Trustee had stated a plausible claim that the Transfer may be avoided as actually fraudulent.[36] In contrast, the Court concluded that the Trustee had not stated a plausible claim for avoidance of the Transfer as constructively fraudulent.[37]

The provision of the statute on which the Trustee relies, section 548(c), is applicable only "to the extent that a transfer or obligation [is] voidable under" section 548.[38] Because the Trustee has failed to state a claim that the Transfer is voidable under section 548(a)(1)(B) as constructively fraudulent, section

---

[35] Adv. D.I. 20 at 6 (citing 11 U.S.C. § 548(c)).

[36] Adv. D.I. 16 at 9-17.

[37] Id. at 5-9.

[38] 11 U.S.C. § 548(c) ("Except to the extent that a transfer or obligation voidable under this section is voidable under section 544, 545, or 547 of this title, a transferee or obligee of such a transfer or obligation that takes for value and in good faith has a lien on or may retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation.").

548(c) does not apply. Further, section 548(c) creates a defense to the avoidance of a transfer that is avoidable under section 548 by granting a lien in the transferred property or allowing the retention of a voidable transfer to the extent that the transferee gave value and acted in good faith.[39] That section does not, as the Trustee suggests, require that the Defendant prove it acted in good faith before the Trustee proves that the Transfer is avoidable.[40]

Further, the authority cited by the Trustee to support his argument that Voyager has the burden to show that it acted in good faith to warrant dismissal of Count 3 is distinguishable.[41] In the Agricultural Research case, the Ninth Circuit concluded that the transfer in question was actually fraudulent and,

---

[39] Id. See also, Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Sec. LLC), 12 F.4th 171, 196 (2d Cir. 2021) (concluding that "good faith is an affirmative defense under Sections 548 and 550 and [subject to] the well-established burden-of-pleading rules, and . . . the trustee is not required to plead a transferee's lack of good faith.").

[40] See, e.g., 5 Collier on Bankruptcy ¶ 548.09 (16th 2026) ("In an action under section 548, once the trustee has met his or her burden of showing the transfer was made with the requisite intent, it is the recipient's burden to prove the existence of good faith and, as applicable, value or reasonably equivalent value.") (citing Madoff Inv. Sec., 12 F.4th at 181-82 (discussing good faith defense of subsequent transferree in case where debtor had admitted it committed actual fraud).

[41] See, e.g., In re Agric. Rsch. & Tech. Grp., Inc., 916 F.2d 528, 535 (9th Cir. 1990) ("Even if the transferee gave reasonably equivalent value in exchange for the transfer avoided on either of the alternate theories, the transferee may not recover such value if the exchange was not in good faith because good faith is 'indispensable' for the transferee who would recover any value given pursuant to 11 U.S.C. § 548(c). . . .").

therefore, held that it need not address whether it was constructively fraudulent.[42] Therefore, its statement that the transferee was required to prove its good faith to defeat a constructively fraudulent transfer is dicta. Similarly, the Bayou Group case does not support the Trustee's argument because the Court in that case held that the section 548(c) good faith defense only applied after the debtor proves the transfer is avoidable as actually or constructively fraudulent.[43]

Because the Court has determined that Voyager has not stated a claim for avoidance of the Transfer as constructively fraudulent, the Court concludes that Voyager was not required to prove its loan to the Debtor was in good faith with respect to that claim.[44]

---

[42] Agric. Rsch., 916 F.2d at 538-39 ("Reasonably Equivalent Value. Because we conclude that the district court was correct in finding that appellants failed to establish a genuine issue of material fact with respect to Agretech's actual intent to defraud its creditors by transferring the sums in question, we need not reach the alternative basis for avoidance" under the state law's constructively fraudulent transfer provision).

[43] Christian Bros. High School Endowment v. Bayou No Leverage Fund, LLC (In re Bayou Grp., LLC), 439 B.R. 284, 308 (S.D.N.Y. 2010) ("After a debtor makes out a prima facie case of actual or constructive fraudulent conveyance, a transferee nevertheless may avoid rescission of a transfer under Section 548(c) of the Bankruptcy Code. . . .").

[44] Id.

## V. CONCLUSION

Because the Trustee has failed to raise any new facts or law to support his argument that the Court made a clear error of law, the Court will deny the Trustee's Motion for Reconsideration of this Court's Memorandum Opinion and Order granting Voyager's Motion to dismiss Count 3 of the Trustee's Complaint.

The Court will issue an Order consistent with this Opinion.

Dated: September 15, 2026 BY THE COURT:

Mary F. Walrath
United States Bankruptcy Judge